■ In the Matter of W. H. MORTON & COMPANY, INC., Petitioner, v NEW YORK STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a franchise tax deficiency imposed pursuant to article 9-A of the Tax Law. The facts are not in dispute. Petitioner, W. H. Morton & Company, Inc. (Morton), is a wholly owned subsidiary of American Express Company (Amexco). Petitioner, up to the date of its acquisition by Amexco in 1966, operated as a dealer in securities. Thereafter, the State and municipal securities portion of its business was transferred to W. H. Morton & Company, Division of American Express (Division). As of December, 1973, petitioner's securities business was terminated and petitioner began operations as the service arm of Division functioning as the record keeper and paymaster for Division. Division was required, as a dealer in State and municipal securities, to make monthly filings with the National Association of Securities Dealers (NASD) and to include in those reports salary and wages paid to employees during the preceding month. If petitioner did not act as paymaster, the employees of Division would be included in Amexco's general payroll, making the timely filing of the NASD reports difficult from an accounting standpoint. In 1976 and 1977, the tax years in dispute, petitioner's corporate officers were elected on an annual basis by its board of directors. The corporate officers devoted most of their time to the business of Division and a minimal amount of time on petitioner's business operations. Their salaries were paid by petitioner's checks, but petitioner was reimbursed for those salaries as well as for all other expenses incurred for Division, pursuant to an agreement between Division and petitioner. For accounting purposes, petitioner showed its payment to its officers and employees as salaries and wages on its books and showed reimbursements from Division as credits. For Federal tax purposes Amexco included petitioner in a consolidated return. For New York State purposes petitioner filed on a separate basis, in conjunction

therewith preparing a separate *pro forma* Federal Form 1120. In 1976 and 1977, the *pro forma* 1120's showed in the deductions portions compensation of officers as $393,828 (1976) and $685,477 (1977), and salaries and wages of $372,965 (1976) and $161,544 (1977). Credits, which reflected reimbursements to petitioner from Division, were shown as "other deductions" of $836,585 (1976) and $965,854 (1977). In 1976, petitioner paid tax in the amount of $450.33, computed on its business and investment capital allocated to this State pursuant to section 210 (subd 1, par [a], cl [2]) of the Tax Law. In 1977, petitioner paid a minimum tax of $250. On October 12, 1979, petitioner was issued two notices of franchise tax deficiency for the years in question. In 1976, the deficiency plus interest was $13,171.16 and for 1977 the amount was $22,669.17. These deficiencies were based on the calculation of petitioner's franchise taxes under section 210 (subd 1, par [a], cl [3]) of the Tax Law which requires officers' salaries to be added to the entire net income of the corporation. After petitioner's application for a redetermination was turned down, petitioner commenced the instant CPLR article 78 proceeding to annul the determination of the State Tax Commission. Section 210 (subd 1, par [a]) of the Tax Law imposes a corporate franchise tax to be calculated by use of one of four alternative means which produces the highest tax: (1) 10% of the corporation's entire net income; (2) one and seventy-eight hundredths mills for each dollar of the corporation's total business and investment capital, or the portion thereof allocated within the State; (3) 10% on 30% of the corporation's entire net income plus salaries and other compensation paid to the corporation's elected or appointed officers and to every stockholder owning in excess of 5% of its issued capital stock minus $15,000[1] and any net loss for the reported year; or (4) a minimum tax of $250. In 1976, petitioner employed the second of these methods to compute its franchise tax of $450.33. In 1977, petitioner paid a minimum tax of $250 using the fourth method. Petitioner's contention that the salaries paid its officers cannot be termed compensation because such officers performed only minimal services for Morton, and, further, that Morton was simply a conduit through which Division paid its employees, must be rejected.[2] Petitioner is correct in its contention that Federal law controls for the purpose of defining entire net income (Tax Law, § 208, subd 9; *Matter of Petrie Stores Corp. v Tully,* 80 AD2d 328). However, it is incorrect in assuming that since the salaries paid its officers were not taken as Federal deductions because Morton was fully reimbursed by Division, the payments to its officers are not "salaries and other compensation" within the meaning of Federal and New York tax law and should not be added back for the purpose of the "income-plus-compensation" calculation of franchise tax liability (Tax Law, § 210, subd 1, par [a], cl [3]). This misconception is premised upon petitioner's view that respondent's notices of deficiency of additional franchise taxes due are based upon respondent's conclusion that petitioner had attempted to avoid tax by distributing profits in the form of excess salaries in violation of the applicable regulation (20 NYCRR 3-3.1 [b]). To the contrary, the finding of franchise tax deficiency was made on the basis of the statutory language of section 210 (subd 1, par [a]) of the Tax Law that requires the computation to be made that produces the highest tax. In this case, the greater tax would be produced by employing the third method contained therein. The method employed by petitioner was incorrect not because of any effect of allocation of income, but because it affected the computation of the franchise tax. The language of

1. This amount was subsequently amended to $30,000 (L 1981, ch 41, § 1).

2. Petitioner's reliance on this court's opinion in *Matter of Ter Bush & Powell v State Tax Comm.* (58 AD2d 691, mot for lv to app den 43 NY2d 644) is misplaced. In that case, the question was whether certain individuals were officers whose compensation should be included in the computation of the franchise tax, an issue that is conceded herein.

section 210 is unambiguous and clearly provides for the inclusion of salary and compensation paid to corporate officers without regard to the actual duties or functions of such individuals (*Matter of Ter Bush & Powell v State Tax Comm.,* *supra*). Since the determination of the tax commission was not unreasonable or irrational, we defer to the agency's interpretation of the applicable statute (*Matter of New York Life Ins. Co. v State Tax Comm.,* 80 AD2d 675, 676, affd 55 NY2d 758). Determination confirmed, and petition dismissed, with costs. Mahoney, P. J., Kane and Yesawich, Jr., JJ., concur.

Main and Mikoll, JJ., dissent and vote to annul in the following memorandum by Mikoll, J. Mikoll, J. (dissenting). We respectfully dissent. The determination of the State Tax Commission on this record is arbitrary and unreasonable. The franchise tax imposed does not bear a reasonable relationship to the privilege granted. The franchise tax is a tax imposed on every domestic corporation, with some exceptions, "for the privilege of exercising its corporate franchise, that is to say, for the mere possession of the privilege" (58 NY Jur, Taxation, § 513, p 682; see *Brady v State Tax Comm.,* 176 Misc 1053, affd 263 App Div 955, affd 289 NY 585). However, "[a] franchise tax should bear a reasonable relationship to the privilege granted, and if the assessment is all out of proportion to the amount of business done within this State it is arbitrary and unreasonable" (*People ex rel. Sheraton Bldgs. v Tax Comm. of State of N. Y.,* 15 AD2d 142, 144, affd 13 NY2d 802). The audit division based its finding on the clear statutory language of section 210 (subd 1, par [a]) of the Tax Law which requires the computation to be made that produces the greater tax. But where the method of assessment adopted by the Tax Commission technically comes within the framework of the statute and the regulations but its application reaches an unfair and inequitable result, as in this case, the procedure cannot be justified (see *People ex rel. Sheraton Bldgs. v Tax Comm. of State of N. Y.* (*supra*). The franchise tax as recomputed here by respondent results in an absurd result in view of Morton's ministerial role as a payment conduit for Division. Morton was simply a conduit through which Division paid its employees in order to better facilitate the record keeping required for Division's monthly NASD reports. The salaries paid its officers cannot really be termed compensation because the officers performed only minimal services for Morton, and all compensation was reimbursed by Division. There is no dispute that the corporate officers were indeed officers of Morton, but their salaries should not be considered as such because they were not taken as Federal deductions and because Morton was fully reimbursed. In view of the foregoing, the application of this income-plus-compensation method results in an unfair imposition of franchise tax liability. The determination should be annulled.